UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN EDWARD SCHMIT,<br><br>           Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | No. 2:14-cv-2373-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 5, 2007, plaintiff's alleged disability onset date, through March 30, 2011, the date plaintiff was last insured.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 21.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

Plaintiff was born on April 30, 1979, has a high school education, and previously worked as a construction laborer.[2]  (Administrative Transcript ("AT") 35, 46-47.)  On April 3, 2010, plaintiff applied for DIB, alleging disability beginning August 5, 2007.  (AT 26, 47, 126-27.)  On October 11, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 26.)  Upon plaintiff's request for reconsideration, the determination was affirmed on January 27, 2011.  (Id.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on August 10, 2011, and at which plaintiff (represented by counsel) and a Vocational Expert ("VE") testified.  (AT 26, 43-60.)

In a decision dated September 19, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from August 5, 2007, plaintiff's alleged disability onset date, through March 30, 2011, the date last insured.  (AT 26-36.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 8, 2013.  (AT 5-11.)  Thereafter, plaintiff filed this action in federal district court on October 9, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

## II.   ISSUES PRESENTED

Plaintiff raises the following issues:  (1) whether the ALJ's residual functional capacity determination ("RFC") was supported by substantial evidence and whether the ALJ improperly failed to consider the treating opinions of Dr. Senegor when making that determination; (2) whether the ALJ improperly assessed plaintiff's subjective testimony regarding the severity of the functional limitations caused by his impairments; and (3) whether the Appeals Council failed to properly consider an additional treating opinion issued by Dr. Senegor that was submitted into the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

record by plaintiff in connection with his application for review of the ALJ's decision.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

    A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff did not engage

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

in substantial gainful activity during the period between August 5, 2007, plaintiff's alleged disability onset date, and March 30, 2011, the date plaintiff was last insured. (AT 28.) At step two, the ALJ determined that plaintiff had the following "severe" impairments: "degenerative disc disease and depressive disorder." (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he was able to lift and carry twenty pounds occasionally and ten pounds frequently. He was able to stand for two hours in an eight-hour workday, walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant was restricted to never climbing ladders and only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing stairs. He had the fair ability to understand, remember, and carry out complex and detailed job instructions.

(AT 30.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 35.) Finally, at step five, the ALJ determined, through the VE's testimony, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, specifically, the representative occupations of small products assembler, lens-block gauger, and charge-account

---

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

clerk.  (AT 36, 58-59.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from August 5, 2007, the alleged onset date, through March 30, 2011, the date last insured.  (AT 36.)

B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.   *Whether the ALJ's RFC Determination was Based on Substantial Evidence and Whether the ALJ Erred in Considering Dr. Senegor's Treating Notes*

First, plaintiff argues that the ALJ erred in determining that plaintiff had the RFC to perform a reduced range of light work because that determination was not based on substantial evidence and did not properly address the medical opinion evidence in the record.

With regard to the medical opinion evidence, plaintiff argues that the ALJ completely disregarded and failed to assign weight to the treating opinions Dr. Senegor developed in connection with the treatment he provided plaintiff, including two spinal fusion surgeries, between April 16, 2009, and January 21, 2011.  Plaintiff claims that these treating records demonstrate that Dr. Senegor provided multiple functional opinions regarding plaintiff's physical capacity that the ALJ failed to address in a meaningful fashion in her decision.  However, the treating records plaintiff highlights in support of his argument provide no opinion regarding plaintiff's functional limitations.  Indeed, the two treating notes plaintiff specifically highlights in his briefing as containing Dr. Senegor's opinions that the ALJ supposedly ignored are merely Dr. Senegor's post-surgery recommendations to plaintiff upon discharge from the hospital after his two spinal fusion surgeries.[4]  (AT 166, 244.)  Furthermore, to the extent the records plaintiff highlights could be construed as opinions, they provide only vague advisements that plaintiff not engage in certain activities for an indeterminate time while he recovered from his spinal fusion surgeries.  (Id.)  In addition, a review of the remaining treating notes in the record issued by Dr. Senegor demonstrates that he did not provide an opinion as to what specific functional limitations

---

[4] Plaintiff appears to acknowledge this fact in his briefing when he describes the opinions he claims were present in Dr. Senegor's notes as advisements. (ECF No. 15-1 at 16.)

plaintiff's impairments imposed on him.[5]  Accordingly, the ALJ did not err by not explicitly noting what weight, if any, she assigned to Dr. Senegor's treating notes.  See Champagne v. Colvin, 582 F. App'x 696, 697 (9th Cir. 2014) (unpublished) ("[Plaintiff's] contention that the ALJ disregarded his treaters' opinions about his limitations lacks merit, because none of the treating providers gave an opinion regarding his functional limitations.").

Furthermore, the ALJ's written decision demonstrates that she specifically considered Dr. Senegor's treating records that plaintiff draws into contention along with the rest of the medical and non-medical evidence in the record, including all of the opinion evidence available to her.  (AT 31-35.)  Therefore, the ALJ did not err in considering Dr. Senegor's treating notes when deciding plaintiff's RFC.

Nevertheless, even though the court finds that the ALJ did not err in considering Dr. Senegor's treatment notes, it agrees with plaintiff's more general assertion that the ALJ's RFC determination regarding plaintiff's physical functioning was not based on substantial evidence from the record.  In her discussion regarding the impact of plaintiff's physical impairments, the ALJ considered the opinions of Dr. Boparai, an examining consultative physician who had examined plaintiff just eight days after his second spinal fusion surgery, and two state agency non-examining physicians, Dr. Brodsky and Dr. Fracchia.  (AT 34.)  The ALJ assigned "no weight" to Dr. Boparai's opinion because Dr. Boparai's examination took place just after plaintiff underwent his second spinal surgery and, therefore, did "not provide an appropriate assessment of the claimant's functional capacity after recovery."  (Id.)  However, she accorded "significant weight" to the non-examining opinions of Dr. Brodsky and Dr. Fracchia and largely adopted their physical functional findings into her RFC determination, which found that plaintiff was capable of performing a reduced level of light work.  (AT 30, 34.)  Even though the opinion of a non-examining medical expert can constitute substantial evidence to support an ALJ's RFC

---

[5] The court recognizes that plaintiff later submitted to the Appeals Council a medical assessment form issued by Dr. Senegor dated October 24, 2011, that opined on plaintiff's physical RFC.  (AT 391-93.)  However, this opinion was both dated and submitted after the date on which the ALJ issued her adverse decision.  Accordingly, the ALJ was not required to consider this opinion in determining plaintiff's RFC as it was not a part of the record at the time she rendered her decision.

6

determination when it is consistent with other independent evidence in the record, see Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995), the record before the ALJ here did not support the limitations opined by the non-examining physicians and adopted by the ALJ for the reasons discussed below.

Dr. Brodsky issued his opinion on October 7, 2010, about a month after plaintiff had undergone his second spinal fusion surgery, and based his opinion entirely on a review of the record that had been developed prior to that operation, with the exception of Dr. Boporai's examining opinion, which Dr. Brodsky dismissed as an inaccurate assessment of plaintiff's actual physical RFC because Dr. Boporai had examined plaintiff just days after he had undergone the surgery. Dr. Brodsky specifically noted in his opinion that plaintiff "may well be severely limited by 9/17/11 (twelve months S/P surgery), but it is too early to make a specific assessment," and that "a reasonable *assumption* is that [plaintiff] will be able to sustain LIGHT pRFC performance by 9/17/11." (AT 287 (italics added).)

Not only did Dr. Brodsky opine limitations based on an assumption of what plaintiff's physical condition would likely be as of September 17, 2011, nearly 6 months after the end of the relevant period, as a result of an assumed successful second surgery, but his opinion also entirely failed to address plaintiff's physical functional capacity prior to the time he underwent his second surgery — a span of time which comprised the large majority of the relevant period at issue. To be sure, the medical evidence in the record from before the date of the second surgery generally indicates that the symptoms of plaintiff's degenerative disc disease continued to progressively worsen even after plaintiff underwent his first spinal fusion surgery and generally caused plaintiff debilitating pain throughout the portion of the relevant period prior to his second surgery. See, e.g., AT 167-68, 198, 200, 203, 207, 227.

Furthermore, plaintiff's treatment records developed after his second spinal fusion surgery indicate that plaintiff's physical condition generally did not improve and may have even begun to decline further in the months after he underwent that second operation. On November 11, 2010, roughly 2 months after plaintiff underwent his second spinal fusion surgery, Dr. Senegor, plaintiff's treating physician, noted that plaintiff felt that his surgery had "worked out well,"

1  plaintiff's pain had been reduced, and "x-rays appear satisfactory for this stage of recovery." (AT
2  308.) However, on January 12, 2011, Dr. Senegor issued a report regarding his 4-month follow-
3  up examination of plaintiff that noted that while plaintiff had initially done well after the surgery,
4  he had "recently . . . developed new lumbar radicular symptoms," including "low back pain and
5  pain radiating down the right leg towards the foot in a fairly typical L5 radicular distribution with
6  numbness in the big toe of the right foot." (AT 363.) Dr. Senegor further noted that plaintiff's
7  pain had "been severe enough that [plaintiff] has once again taken to the use of a cane and
8  recently appeared in an emergency room." (Id.) He also determined that plaintiff's "foot drop on
9  the right, which has been chronic, is still present." (Id.) Similarly, Dr. Senegor noted in his 5-
10 month follow up report that plaintiff "still ha[d] a good deal of low back and leg pain," "had
11 trouble bearing weight with the right leg," and limped when he walked. (AT 362.) Finally, Dr.
12 Senegor noted after conducting an 8-month follow up on May 12, 2011 that plaintiff was
13 "experiencing a good deal of pain and muscle spasm in the right calf and the right calf and shin
14 areas are numb," and that plaintiff was "still using morphine with Norco for breakthrough pain as
15 well as muscle relaxers and Xanax." (AT 361.) In addition, a treating report from the Pain
16 Management Center regarding a clinic visit on August 5, 2011, shows that plaintiff continued to
17 suffer from chronic lower back pain, exhibited a positive straight leg raise on his right side, and
18 noted that it was "not clear whether [plaintiff would] require further surgical interventions in
19 order to stabilize his spine."[6] (AT 387-90.) In short, the objective medical evidence in the record
20 produced after plaintiff's second surgery did not provide substantial support for Dr. Brodsky's
21 opined functional limitations, which were based entirely on a prediction that plaintiff's condition
22 would improve after his second surgery.
23 ////
24 ////

---

[6] While the May 12, 2011, and August 5, 2011 examinations took place after the relevant period had concluded, these documents were considered by the ALJ and were relevant to plaintiff's physical functional capacity during the relevant period insofar as they reflected that plaintiff's symptoms stemming from his physical impairments were still present in the months after plaintiff underwent his second spinal fusion surgery and did not appear to improve as time progressed after the surgery, contrary to Dr. Brodsky's prognostication.

Despite the fact that Dr. Brodsky's opinion was based only on a consideration of evidence developed prior to the date on which plaintiff underwent his second spinal fusion surgery, did not address plaintiff's functional capacity prior to that surgery, was based on an admitted speculation as to what plaintiff's physical RFC would likely be a year after that surgery, and was generally not supported by the objective medical evidence developed both prior to and after that surgery, the ALJ still accorded great weight to Dr. Brodsky's opinion and largely adopted the functional limitations contained therein. (AT 34.) That determination was in error.

The ALJ's reliance on Dr. Fracchia's non-examining opinion also did not constitute substantial evidence in support of her RFC determination. Unlike Dr. Brodsky, Dr. Fracchia had the benefit of reviewing the first post-operation treating report that Dr. Senegor issued in November of 2010 that indicated that plaintiff's second surgery was successful and he was recovering at a satisfactory rate. (AT 343.) However, Dr. Fracchia did not have an opportunity to review plaintiff's treating records developed thereafter, in early-to-mid 2011, that indicated that plaintiff began to again suffer from severe symptoms as a result of his physical impairments soon after that first follow up visit with Dr. Senegor and continued to experience those symptoms in the months after he underwent his second spinal fusion surgery. (See AT 361-63.) In addition, Dr. Fracchia noted that Dr. Brodsky's "initial determination [was] not correct in that it did not address the period from [the alleged onset date] to 9/10 [the month plaintiff underwent his second surgery,] in addition to projecting recovery after [plaintiff's] recent surgery." (AT 344.) However, Dr. Fracchia still issued an opinion providing physical functional limitations remarkably similar to those opined by Dr. Brodsky — that plaintiff was essentially capable of performing light work with some additional physical functional limitations. Indeed, aside from finding plaintiff somewhat more limited in his ability to stand or walk, Dr. Fracchia opined the exact same limitations opined by Dr. Brodsky. (Compare AT 281-85 with AT 345-49.) As discussed above with regard to Dr. Brodsky, those opined limitations were not supported by the objective medical evidence in the record from both before and after plaintiff's second spinal fusion surgery. Because the functional limitations contained in Dr. Fracchia's opinion were not generally supported by the other medical evidence in the record, the ALJ could not rely on that

1    opinion as substantial support for her RFC determination that largely adopted those limitations.

2        In sum, the non-examining opinions of Dr. Brodsky and Dr. Fracchia did not constitute

3    substantial evidence in support of the ALJ's RFC determination because they were not supported

4    by the other medical evidence in the record from throughout the relevant period. See Lester v.

5    Chater, 81 F.3d 821, 831 (9th Cir. 1995). Accordingly, the ALJ's sole reliance on those opinions

6    to support her RFC determination was prejudicial error.

7        Furthermore, while the ALJ correctly highlighted the fact that Dr. Boporai's examining

8    opinion likely did not accurately reflect plaintiff's physical RFC throughout the course of the

9    relevant period because his orthopedic examination of plaintiff was conducted while plaintiff was

10   still recovering from his second spinal fusion surgery, this invalid examination was entirely the

11   Commissioner's own doing because it was the Administration that had scheduled it to take place

12   in such close temporal proximity to plaintiff's surgery. See 20 C.F.R. § 404.1517 ("If we arrange

13   for the examination or test, we will give you reasonable notice of the date, time, and place the

14   examination or test will be given, and the name of the person or facility who will do it."). Given

15   the lack of other examining or treating opinions in the record addressing plaintiff's physical

16   impairments, and the fact that the medical evidence in the record did not support the non-

17   examining physicians' opinions on which the ALJ relied, the ALJ should have obtained a second

18   consultative examination of plaintiff's physical impairments. Accordingly, the ALJ failed to

19   properly develop the record with regard to the impact of plaintiff's physical impairments in a

20   manner that accurately depicted plaintiff's physical functioning throughout the course of the

21   relevant period and erroneously based her RFC determination on the less-than-substantial opinion

22   evidence that was in the record.

23       2.    *The ALJ's Error Warrants Remand for Further Administrative*

24           *Proceedings*

25       When the court finds that the ALJ committed prejudicial error, it has the discretion to

26   remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

27   Generally, if the court finds that the ALJ's decision was erroneous or not supported by substantial

28   evidence, the court must follow the "ordinary remand rule," meaning that "the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). A remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues. Id. at 1101.

Here, plaintiff argues that the ALJ's error requires this matter to be remanded for further administrative proceedings. The court agrees. As discussed above, the opinion evidence in the record regarding plaintiff's spinal impairments has not been adequately developed such that the ALJ could make a proper RFC determination regarding the functional impact of those impairments on plaintiff's ability to perform physical work-related activities throughout the course of the relevant period. Accordingly, development of the record through further administrative proceedings is warranted.

On remand, the ALJ shall obtain a consultative examination of plaintiff by a physician who has full access to plaintiff's past medical records. The consultative examination shall be focused on ascertaining what plaintiff's functional limitations were between August 5, 2007, plaintiff's alleged disability onset date, and March 30, 2011, plaintiff's date last insured, but shall also consider whether plaintiff's impairments and functional capacity improved or worsened thereafter through the present.[7] Furthermore, the ALJ shall consider the full treating opinion of Dr. Senegor dated October 24, 2011, that plaintiff provided to the Appeals Council in connection with his request for review of the ALJ's decision.[8]

////

////

---

[7] Although the consultative examination will take place in the present, the consultative examiner shall use best efforts, utilizing the findings of the present physical examination, plaintiff's past medical records, and the examiner's clinical expertise and judgment, to render an opinion regarding plaintiff's functional capacity during the relevant period.

[8] Plaintiff asserts in his briefing that the Appeals Council did not review the entirety of Dr. Senegor's opinion because only two of the five pages of that document were included as part of the administrative transcript. (See AT 392-93.) While the court declines to address the merits of plaintiff's contention for the reasons discussed below, on remand the ALJ shall permit plaintiff to supply a new copy of Dr. Senegor's opinion dated October 24, 2011, and shall consider that opinion in conjunction with the other evidence in the record.

3.  *Other Issues*

In light of the court's conclusion that the case must be remanded for further development of the record, the court provides no opinion at this time regarding whether the ALJ failed to properly consider plaintiff's testimony when assessing plaintiff's RFC.  The ALJ is free to reevaluate her analysis with respect to this issue, or any other aspect of her decision.  On remand, the ALJ will have an opportunity to further consider the issues, and address the medical evidence and non-medical testimony, including plaintiff's testimony, in context of the record as a whole.  The court also finds plaintiff's final argument — that the Appeals Counsel failed to consider the entire opinion issued by Dr. Senegor on October 24, 2011, in connection with its consideration of plaintiff's request to review the ALJ's decision — is moot due to the above order directing the ALJ to consider Dr. Senegor's opinion on remand.

V.  CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is DENIED.

3. The case is remanded for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  March 25, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE